Galvin B. Kennedy, *Pro Hac Vice*
gkennedy@kennedyhodges.com
Gabriel Assaad, *Pro Hac Vice*
gassaad@kennedyhodges.com
KENNEDY HODGES, L.L.P.
711 W. Alabama Street
Houston, TX  77006
Telephone:  (713) 523-0001
713-523-1116

John M. Padilla (Cal. Bar No. 279815)
jpadilla@pandrlaw.com
PADILLA & RODRIGUEZ, L.L.P.
601 South Figueroa Street, Suite 4050
Los Angeles, CA 90017
Telephone: (213) 244-1401
Facsimile: (213) 244-1402

Jahan C. Sagafi (Cal. Bar No. 224887)
jsagafi@outtengolden.com
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810

Christopher McNerney, *Pro Hac Vice*
cmcnerney@outtengolden.com
OUTTEN & GOLDEN LLP
3 Park Ave
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

Attorneys for Plaintiffs, Lyle E. Galeener and the Putative Class

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| LYLE E. GALEENER, SEAN HAMER and MATTHEW VARGAS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>V.<br><br>SOURCE REFRIGERATION & HVAC, INC.,<br><br>Defendant. | Case Number: 3:13-cv-04960-VC<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM IN SUPPORT OF MOTION**<br>Hearing Date:   August 20, 2015<br>Hearing Time:  10:00 a.m.<br>Courtroom: 10 |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 20, 2015 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10 of this Court, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Lyle Galeener, Sean Hamer and Matthew Vargas, on behalf of themselves and all others similarly situated ("Plaintiffs") will, and hereby do, move this Court to grant, pursuant to Federal Rule of Civil Procedure 23(e), final approval of the Stipulation of Class Settlement and Settlement Agreement (the "Settlement") (Dkt. 119-2), and entry of judgment in accordance with the Settlement; and (2) to grant, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), and section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), final class certification and collective action designation of the settlement Class conditionally certified in the Preliminary Approval Order.

Plaintiffs make this motion on the ground that the Settlement was reached after arms-length negotiations by counsel for Plaintiffs and the Class and counsel for Defendants ("the Parties"), is fair and reasonable, has drawn a very favorable response from the Class, and should be given final approval by the Court for all the reasons set forth in the following memorandum in support of the motion.

This motion is supported by this notice; the following memorandum in support of the motion; the Declaration of Galvin B. Kennedy in Support of Motion for Attorneys' Fees, Reimbursement of Costs and Expenses, and Award of Class Representative Service Payments ("Kennedy Fee Decl.," contemporaneously filed); the Declaration of Ani Shirinian of CPT Group, Inc. Describing Settlement Administrator's Implementation of Settlement Agreement ("CPT Decl."); the Notice of Motion and Unopposed Motion for Order (1) Conditionally Certifying Settlement Class, (2) Granting Preliminary Approval to Proposed Class Action Settlement and Plan of Allocation, and (3) Directing Dissemination of Class Notice to Class, and (4) Setting Final Approval Hearing Date and Related Dates; Memorandum in Support of Motion filed with the Court February 19, 2015 (Dkt. 119) and supporting papers; Plaintiffs' Motion for Final Approval of Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Award

of Class Representative Service Payments and supporting papers, filed contemporaneously herewith; the Preliminary Approval Order (Dkt. 131); the Court's record in this action; all matters of which the Court may take notice; and any oral and documentary evidence presented at the hearing on the motion.

Respectfully submitted,

Dated: June 29, 2015

/s/Galvin B. Kennedy
Galvin B. Kennedy, Pro Hac Vice
gkennedy@kennedyhodges.com
Gabriel Assaad, Pro Hac Vice
gassaad@kennedyhodges.com
KENNEDY HODGES, L.L.P.
711 W. Alabama Street
Houston, TX  77006
Telephone:  (713) 523-0001
Facsimile:   (713) 523-1116

/s/ John M. Padilla
John M. Padilla (Cal. Bar No. 279815)
Email:  jpadilla@pandrlaw.com
PADILLA & RODRIGUEZ, L.L.P.
601 South Figueroa Street, Suite 4050
Los Angeles, CA 90017
Telephone: (213) 244-1401
Facsimile: (213) 244-1402

/s/Jahan C. Sagafi
Jahan C. Sagafi (Cal. Bar No. 224887)
jsagafi@ottengolden.com
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810

Christopher McNerney, *Pro Hac Vice*
cmcnerney@outtengolden.com
OUTTEN & GOLDEN LLP
3 Park Ave
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

*Attorneys for Plaintiffs and Class Members*

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ....................................................................1

MEMORANDUM IN SUPPORT OF MOTION ........................................................1

    I.        INTRODUCTION ......................................................................1

    II.      BACKGROUND ........................................................................2

          A.     The Litigation.................................................................2

          B.     The *Meza* Action...........................................................3

          C.     Preliminary Approval of the Settlement. ....................3

          D.     The Settlement Class.....................................................3

          E.     The Settlement……………………………………………… 4

          F.     Notice Process……………………………………………… 5

               1.     The Settlement's Class Notice Requirements Were Satisfied……. 5

               2.     CAFA's Notice Requirements Have Been Satisfied…………….. 6

    III.     ARGUMENT ............................................................................6

          A.     The Best Practicable Notice Of Settlement Has Been Provided To The Class.......................................................................7

          B.     Final Approval Is Appropriate Under Rule 23 If It Is Fair, Adequate, And Reasonable, And Under The FLSA It Is Fair. ..............................................7

          C.     The Settlement Is Presumably Fair Because Of The Lack Of Any Objection To The Settlement By Class Members To Date, The Significant Discovery Conducted, Class Counsel's Experience, And The Arms-Length Negotiations.....................................................................9

               1.     To Date, The Settlement Administrator And Class Counsel Have Received No Objections From Class Members.............................10

               2.     The Parties Engaged In Substantial Investigation And Analysis Of The Legal Issues ...........................................................10

               3.     The Recommendation Of Experienced Counsel Favor Approval Of The Settlement ...............................................................12

               4.     The Parties Participated In Arms-Length Negotiations Before An Experienced Neutral Mediator .......................................13

          D.     The Settlement Provides Substantial, Certain Benefits and Avoids The Risk, Cost, Delay, And Burden Of Further Litigation..............................14

               1.     The Value Of The Settlement Favors Final Approval ..................14

               2.     Further Litigation Would Involve Risk, Expense, Delay, And Burden On Class Members .......................................14

          E.     The Court Should Grant Final Class Certification And Collective Action Designation. ............................................................16

    IV.     CONCLUSION.......................................................................16

i.

# TABLE OF AUTHORITIES

**Page**

## CASES

*Boyd v. Bechtel Corp.*, 485 F.Supp. 610 (N.D. Cal. 1979)……………………………………… 8, 12

*Chun-Hoon v. McKee Foods Corp.*, 716 F.Supp.2d 848 (N.D. Cal. 2010)…………………….. 10

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974)………………………………… 14

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992)……………………………………… 1, 8

*Eisen c. Carlistle & Jacquelin*, 417 U.S. 156 (1974)……………………………………………... 7

*Ellis v. Naval Aire Reowrk Facility*, 87 F.R.D. 15 (N.D. Cal. 1980)………………………… 8, 12

*Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013)…………………… 15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)………………………………... 8, 12, 14

*Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001)……………………………………………………………………………………………….. 13

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)………………………………... 12

In re Pacific Enterprises Sec. Litig., 47 F.3d 373 (9th Cir. 1995)…………………………….... 12

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)……………………………… 14

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ……………………….…… 8

*Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832 (9th Cir. 1976)................................. 10

M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc., 671 F.Supp. 819, 822 (D. Mass. 1987).9

*Mora v. Harley-Davidson Credit Corp.*, 2014 WL 29743 (E.D. Cal. Jan. 3, 2014)…………….. 15

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)…………………………… 7

Nat'l Rural Telecomms. Coop v. DIRECTV, Inc., 221 F.R.D. 523 (C.D. Cal. 2004)……....…… 10

Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615 (9th Cir. 1982)…………………… 7, 14

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)……………………………………………… 9

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) …………………………………….…… 7

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009)………………………… 12

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)…………………………………………… 1

*Thieriot v. Celtic Ins. Co.*, 2011 WL 1522395 (N.D. Cal. Apr. 21, 2011)…………………….... 15

**TABLE OF AUTHORITIES**
(continued)

Page

*Tijero v. Aaron Bros. Inc*., 2013 WL 6700102 (N.D. Cal. Dec. 19, 2013)……………………… 13

*Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370 (9th Cir. 1993)…………………………………… 8

**TREATISES**

*Manual for Complex Ligitation, Fourth* (Fe. Judicial Center 2004)*, § 21.6 …………………. 8, 13

## MEMORANDUM IN SUPPORT OF MOTION

## I.    INTRODUCTION

Plaintiffs request that this Court grant final approval of the Settlement.  Defendant Source does not oppose it.  This Settlement resolves litigation over Plaintiffs' and Class Members' claims that Source Refrigeration & HVAC, Inc. ("Source" or "Defendant") violated the Fair Labor Standards Act ("FLSA") and wage and hour laws of various states by failing to pay its Service Technicians overtime, failing to compensate them for standby time, miscalculating overtime rates of pay by excluding shift-differential pay from the Service Technicians' regular rate of pay and, with respect to the California Class Members, violating meal and rest period laws.  (Dkts. 1 and 123, Complaint and Second Amended Complaint, respectively).   The Settlement is the product of arms-length negotiations by experienced counsel, after significant investigation, and recognition of the strengths and weaknesses of each side's positions.

The Settlement, in the amount of $10,000,000, readily satisfies the Rule 23 standard of being "fair, reasonable, and adequate."  The Class has responded extremely favorably to the Settlement.  To date, of the 1,145 Class Members to whom notices were mailed, none (0%) have objected, only one (less than 0.1%) has opted out, and 35 have provided updated contact information or employment information to the settlement administrator.[1]  *See* Declaration of Ani Shirinian of CPT Group, Inc. Describing Settlement Administrator's Implementation of Settlement Agreement ("CPT Decl."), ¶¶ 11, 12, 17.   Furthermore, Class Counsel have conducted sufficient discovery to enable them (who are among the most highly experienced attorneys in the country handling complex wage and hour class and collective actions) to adequately evaluate the claims and defenses in the action.  (Dkt. 119-1, Declaration of Galvin B. Kennedy In Support of Preliminary Approval ("Kennedy Preliminary Approval Decl."), ¶¶ 14-22).  Lastly, the Settlement is in line with the strength and recoverability of Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation.  *See Staton v.*

---

[1] Pursuant to the Court's preliminary approval order (Dkt. 131), Class Counsel will supplement these numbers after the deadline to opt out, object and/or challenge data, by August 6, 2015.

*Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

In connection with requesting final settlement approval, Plaintiffs also request that the Court confirm as final (1) the certification of the Class conditionally certified in its Preliminary Approval Order; (2) the designation of the case as a collective action under the FLSA as preliminarily designated in that Order; and (3) the appointment of Plaintiffs as the Class Representatives and of Plaintiffs' counsel as Class counsel as initially provided in that Order ("Class Counsel").[2]

## II.    BACKGROUND

### A.    The Litigation

On October 24, 2013, Plaintiff Lyle Galeener commenced this class and collective action against Source.  Plaintiff alleged that Source violated the FLSA and the wage and hour laws of the various states by failing to pay its Service Technicians overtime, failing to compensate them for standby time, and miscalculating overtime rates of pay by excluding shift-differential pay from the Service Technicians' regular rate of pay.  (Dkt. 123, Second Amended Complaint). Plaintiff further asserted claims for unjust enrichment, and state law claims for meal and rest period violations, unfair competition, and various penalties in California.  *Id.*

Throughout the litigation, Source disputed (and continues to dispute) Plaintiffs' allegations, contending instead that collective action certification and class certification were inappropriate and denying any liability for any of the claims that Plaintiffs or the Class Members have raised or could have raised.  (Dkt. 9, Answer to Complaint).  The litigation was hotly contested, with Source bringing an unsuccessful motion to bar collective and class action status (Dkt. No. 43), and stay the proceedings (Dkt. No. 63), and Plaintiff successfully moving to compel discovery (Dkt. No. 44).

---

[2] Pursuant to the Settlement Agreement and the Court's Preliminary Approval Order, Plaintiffs' counsel have moved separately for Class Representative Service Payments and for Class Counsel's Attorneys' Fees and Costs.  (*See* Dkt. 131).  Source does not oppose that motion.

### B.      The *Meza* Action

On March 19, 2014, a copycat lawsuit was filed in state court, *Meza v. Source*, Case No. 30-2014-00712145-CU-OE-CXC (Cal. Super. Ct.).   Source and Meza reached a tentative settlement agreement of claims raised in this and the *Meza* case.   Meza filed a motion for preliminary approval of his settlement asking Judge Robert J. Moss of the Orange County Superior Court to approve a settlement of $3,400,000 on behalf of both the service technicians and a group of construction employees.   Of the $3,400,000, the *Meza* settlement estimated that 80% (or $2,737,125) was attributable to the California service technicians' claims.   Kennedy Preliminary Approval Decl., Ex. B (Declaration of Farzad Rastegar in Support of Plaintiff Ramon Meza's Motion for Preliminary Approval), ¶ 14(b).   Plaintiff Galeener, with Class Counsel's assistance, intervened in *Meza*.   At the hearing on the intervention motion, Judge Moss granted Plaintiff's request that the preliminary approval motion be continued, to allow time for this Court to address Plaintiff's pending Rule 23 class certification.   Judge Moss inquired whether Meza, as the second-filed case, should be stayed altogether, at least as to the service technicians (since the construction employees were not—and are not—part of this action).   (Dkt. 119).

### C.      Preliminary Approval of the Settlement

On March 13, 2015, this Court granted preliminary approval of the Settlement, conditionally certified the Class, ordered that the Class be sent notice of the Settlement, and set a schedule for final approval.   (Dkt. 131).   The Court determined that the Settlement "falls within the range of possible approval as fair, adequate, and reasonable," is "the result of arms-length negotiations between the Parties," "is non-collusive," and was reached only "after Class Counsel had investigated Plaintiffs' claims and become familiar with their strengths and weaknesses." (Dkt. 131, § IV.).

### D.     The Settlement Class

As part of the Settlement, Source agreed to certification of the following state law settlement classes under Federal Rule of Civil Procedure 23:  all current and former Source employees who are or were employed in the Covered Positions during the applicable Covered Periods: (1) an Arizona state-law class; (2) a California state-law class; (3) a Colorado state-law class; (4) a Florida state-law class; (5) a Georgia state-law class; (6) a Idaho state-law class; (7) a Nevada state-law class; (8) a New Mexico state-law class; (9) an Oregon state-law class; (10) a quantum meruit state-law class consisting of employees who worked in Texas, Alabama, Minnesota, Montana, Nebraska, Oklahoma, North Carolina, South Carolina, Tennessee, Utah, and/or Wyoming; and (11) a Washington state-law class.

The term "Covered Position" means the nonexempt hourly service technician position at Source in the United States.  (Dkt. 119-2, § I.J).  The term "Covered Period" means from October 24, 2009 through August 20, 2015 in California, and from October 24, 2010 through August 20, 2015 elsewhere.  *Id.*, § I.I.

### E.     The Settlement

The Settlement creates a common fund of $10,000,000.  (Dkt. 119-2, § I.R).  After deducting for the Class Representative Payments ($75,000), the Class Counsel's Attorneys' Fees[3] and Costs Payment ($3,000,000 in fees plus $195,000 in costs), and the costs of claims administration ($30,000), the remainder of the Settlement will be distributed to the Class Members who submit claim forms.[4]  *Id.*, § XII.A.  The unclaimed amounts, if any, will revert to Source.  *Id.*, § XIV.C.

---

[3] Attorneys' Fees are paid in four "Tranches" as described in the Settlement.  (Dkt. 119-2, § XIV.D).

[4] For tax purposes, half of each Settlement Share will constitute a settlement of claims for wages and half will be deemed a settlement of claims for interest and penalties. The Settlement Administrator will issue to each claimant an IRS Form W-2 for the wage portion and a Form 1099 for the interest and penalties portion of the Settlement Share.  (Dkt. 119-2, § XIV.A.2). The employer's share of taxes on the wage payments will be paid by Source separately.  *Id.* at §§ XII.A, XIII.D.

In exchange, participating Class Members will release Source and related entities[5] from Covered Claims arising under state statutory law or common law and under the FLSA. *Id*., §§ XVI.B and C. "Covered Claims" means "all claims – both known or unknown and whether pleaded or not – (a) for worked but unpaid time; (b) for unpaid or underpaid overtime; (c) concerning rest breaks or meals breaks; and (d) concerning payroll requirements or pay practices." *Id*., § II.H.

The scope of these releases was fully described in the Court-approved Notice. (Dkt. 131, Ex. A, Class Notice, ¶ 12).

### F.   Notice Process

#### 1.   The Settlement's Class Notice Requirements Were Satisfied.

The procedures for giving notice to the Class Members, as set forth in the Settlement and ordered in the Preliminary Approval Order, have been properly followed. (*See* Dkt. 131, Preliminary Approval Order; Dkt. 119-2, Settlement, § VII). The Court directed that the proposed Class Notice and individualized Confirmation Forms be sent to Class Members, in the manner specified by the Settlement. Preliminary Approval Order, § V.A; Settlement, § VII.

The Parties implemented the instructions of the Preliminary Approval Order in this regard. On or about April 10, 2015, Source provided the settlement administrator, CPT Group, Inc. ("CPT"), with a database that listed for each Class Member the Class Member's name, social security number, employee ID number, last known address, all known personal e-mail addresses and information adequate to calculate Class Members' award allocations, including but not limited to: time records and pay records applicable to each week within the Covered Period during which the Class Member worked in a Covered Position, as well as their location

---

[5] The Released Parties include Source and all of its past and present parent companies; investors in Source or in those parent companies – including Arsenal Capital Partners LP, Arsenal Capital Management LP, and all other Arsenal Capital entities; controlling persons, subsidiaries, and affiliates of Source or of those parent companies; directors, officers, agents, attorneys, and employees of Source or of its parents, its affiliates, or their investors; and any benefit plans sponsored by any such entities. (Dkt. 119-2, § II.H)

(including state) of work. CPT Decl., ¶ 5.  On April 27, 2015, CPT sent the Class Notice and the individualized claim forms to each of the 1145 Class Members.  *Id.*, ¶ 7.

The individualized Confirmation Forms listed (a) start date; (b) end date; (c) state of work; (d) most recent hourly wage; and (e) average hours worked.  *Id.*, ¶ 4.  This detailed information put Class Members in the best possible position to evaluate their options as to whether to participate, opt out and/or object.  The Notice informed Class Members of their right to contest this information, with disputes resolved by the Settlement Administrator based on evidence provided by the Class Members and Source.  *Id.*  The Notice also explained the process for objecting to the Settlement and excluding oneself from the Settlement, along with contact information for Class Counsel and the Settlement Administrator.  *Id.*

The Settlement Administrator followed accepted best practices to ensure that the Notice reached as many Class Members as feasible.  The Settlement Administrator disseminated the Court-approved Notice to all Class Members by personal e-mail and by first class mail.  As to the mailed notices, the Settlement Administrator used the National Change of Address ("NCOA") database to verify the accuracy of all addresses prior to sending the Notices.  *Id.*, ¶ 6. The Settlement Administrator ran traces on the addresses of any returned Notices to again search for an updated address.  *Id.*  Only 20 Notices were returned as undeliverable after the Settlement Administrator were unable to trace better addresses.  *Id.*, ¶ 10.  The Settlement Administrator also maintained a toll-free telephone number and a website to provide Class Members with additional information. *Id.* at ¶ 2.

## 2.     CAFA's Notice Requirements Have Been Satisfied.

On or about March 2, 2015, Source served upon the Attorney General of the United States and the appropriate officials of the states in which the Class Members reside a notice of the Settlement consisting of: a copy of the complaint in this action; a notice of the scheduled judicial hearings in this class action; copies of the Settlement; the proposed Notice Materials; and the names of Class Members and their estimated proportionate share of the entire Settlement. Kennedy Final Approval Decl., ¶ 4. The Notice of Settlement also invited comment on the

Settlement.  The Parties have not received any comments from any state officials.  *Id*.  The final approval hearing, set for June 30, 2011, is being held more than 90 days after the issuance of the CAFA notice, such that the final approval order may be entered in accordance with CAFA's notice requirements if the Court finds that all other requirements are met. 28 U.S.C. § 1715(d).

## III.   ARGUMENT

### A.   The Best Practicable Notice Of Settlement Has Been Provided To The Class.

The mailing of the Class Notice and individualized claim forms to Class Members, and the general administration of the notice process as described above, meet the requirements for the "best practicable" notice in this case as necessary to protect the due process rights of Class Members.  *See* Dkt. 131, Preliminary Approval Order, §V.C. ("[T]he Class Notice will provide the best notice practicable, satisfies the notice requirements of Rule 23(e), and satisfies all other legal and due process requirements."); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of the litigation and explanation of opt-out rights satisfies due process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections").  Therefore, the Court may proceed to determine the fairness and adequacy of the Settlement, and order its approval, secure in the knowledge that all absent Class Members have been given the opportunity to participate fully in the opt-out, comment, and approval process.

### B.   Final Approval Is Appropriate Under Rule 23 If It Is Fair, Adequate, And Reasonable, And Under The FLSA If It Is Fair.

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Class action lawsuits readily lend themselves to compromise because of the

difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *City of Seattle*, 955 F.2d at 1276 (noting that "strong judicial policy … favors settlements, particularly where complex class action litigation is concerned").  On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton,* 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

Similarly, under the FLSA, a settlement that results in waiver of FLSA claims should be approved where it is "entered as part of a stipulated judgment approved by the court after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).  A settlement is fair, adequate and reasonable, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation, Fourth* (Fed. Judicial Center 2004) ("*Manual*"), § 21.6 at 309.

When determining whether to grant final approval, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the Parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating Parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.  The court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the state of the proceedings; the experience and views of counsel … and the reaction of the class to the proposed settlement." *Class Plaintiffs*, 955 F.2d at 1291; *accord Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993).  "The recommendations of Plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980)

1   ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-

2   fought negotiations is entitled to considerable weight.").

3   **C.     The Settlement Is Presumptively Fair Because Of The Lack Of Any**
       **Objection To The Settlement By Class Members To Date, The Significant**
4       **Discovery Conducted, Class Counsel's Experience, And The Arms-Length**
       **Negotiations.**
5

6       The Court should begin its analysis with a presumption that the Settlement is fair and

7   should be approved, due to (1) the lack of any objection to the Settlement by the Class Members,

8   (2) the meaningful discovery conducted, (3) Class Counsel's significant experience in this kind

9   of litigation, and (4) the arms-length negotiations before an experienced mediator.  *See Ortiz v.*

10  *Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arms-length negotiations conducted

11  by competent counsel after appropriate discovery are *prima-facie* evidence that the settlement is

12  fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819,

13  822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after

14  meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is

15  presumptively fair.").  These factors are well satisfied here.

16      First, with the deadline for objections only two weeks away, the Settlement Administrator

17  has received *zero* objections to the Settlement.  CPT Decl., ¶ 17.  Second, as discussed in more

18  detail below, the Parties engaged in a significant exchange of relevant information and data in

19  advance of the mediation.  (*See* Dkt. 119, Preliminary Approval Motion, §§ II.D and E; Dkt.

20  119-1, Kennedy Preliminary Approval Decl., ¶¶ 18, 19, 26 and 27).  As a result of these efforts,

21  Class Counsel had sufficient information to evaluate the strengths and weaknesses of the Class

22  claims and defenses, whether to pursue litigation or settle, and the appropriate settlement value

23  for the claims at issue.  Third, Class Counsel are highly experienced in wage and hour class

24  action litigation, and several of them are particularly experienced in litigating these types of

25  claims on behalf of these employees against this very defendant.  (Dkt. 119-1, Kennedy

26  Preliminary Approval Decl., ¶¶ 6, 7 and 13).  Fourth, the Settlement was reached only after

27  arms-length, good-faith negotiations under the supervision of an experienced mediator, Susan

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF SETTLEMENT; MEMORANDUM IN SUPPORT OF MOTION
CASE NO. 3:13-CV-04960-VC

1  Haldeman of Gregorio, Haldeman & Rotman in San Francisco, California.  The case has been

2  zealously litigated by both sides.  There are no indicia of collusion.

3      For all these reasons, a presumption is appropriate that the class relief in the Settlement is

4  fair.

5          **1.    To Date, The Settlement Administrator And Class Counsel Have**

6          **Received No Objections From Class Members.**

7      To date, with only two weeks left before the objection deadline, the Settlement

8  Administrator has not received *any* objections to the Settlement.  CPT Decl., ¶ 17.  This strongly

9  indicates a favorable class reaction, especially in a class of 1,145 Class Members.  *See Chun-*

10 *Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (approving settlement

11 where no objections raised to settlement); *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221

12 F.R.D. 523, 526 (C.D. Cal. 2004) (holding that "in the absence of a large number of objections to

13 a proposed class action settlement, settlement actions are favorable to the class members."); *see*

14 *also Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976).

15     Moreover, with only two weeks left before the exclusion deadline, only one Class

16 Member has opted out of the Settlement.  CPT Decl., ¶ 12.  This overwhelmingly positive

17 reaction of the class strongly supports final approval of the settlement.  *Chun-Hoon*, 716 F. Supp.

18 2d at 850 (N.D. Cal. 2010) (granting final approval where 16 of 329 class members opted out,

19 explaining that where exclusions and opt-outs are low, there is a presumption of a favorable class

20 reaction).

21         **2.    The Parties Engaged In Substantial Investigation And Analysis Of**

22         **The Legal Issues.**

23     Since March 19, 2012, when Kennedy Hodges, LLP first filed *Villarreal v. Source*

24 *Refrigeration & HVAC, Inc.*, No. 12 Civ. 243 (W.D. Tex.), counsel have made diligent efforts to

25 prosecute the claims of Service Technicians.  *Villarreal* involved substantially similar claims as

26 in this case and Class Counsel settled that case after a year of litigating and much discovery.

27 Kennedy Fee Decl., ¶ 33.  Likewise here, Plaintiffs engaged in extensive fact-gathering, informal

28

and formal discovery, and detailed discussions of the legal and factual issues before reaching the Settlement. (Dkt. 119-1, Kennedy Preliminary Approval Decl., ¶¶ 14-27).

During the pre-filing stage, Class Counsel interviewed several class members, who provided information regarding their job duties, the hours they worked, Source's organizational structure, and its pay policies. *Id.*, ¶ 15.

After this litigation was formally under way, Plaintiffs propounded discovery requests on March 24, 2014 and again on June 23, 2014 and responded to discovery propounded by Source. *Id.*, ¶ 17.   Class Counsel reviewed and analyzed over 10,000 pages of documents including service operating procedures, payroll and time tracking data, including job descriptions and other documents related to job duties and responsibilities, and computer coding documents used to create formulas used to calculate the class members' pay. *Id.*, ¶ 19.  Class Counsel also reviewed several versions of complex "payroll guidelines" that described the various pay rates that applied to Service Technicians based upon when the work was performed. *Id.*, ¶ 18.

Class Counsel also deposed five witnesses in this action, including: Lisa Baldewin, Vice President of Administration; Carlos Lamas, the Regional Director for California Service; Jenwen Huang, Database Consultant; Brad Howard, the Chairman of Source Refrigeration HVAC; and Scott Rosner, Chief Financial Officer. *Id.*, ¶¶ 20-21.   Moreover, in *Vargas*, Class Counsel deposed Mark Saba, Service Manager, and Renae Hess, Service Payroll and Billing Manager. *Id*, ¶ 22.  Those witnesses' testimony was informative regarding the merits of the claims and the likelihood of this case being certified as a collective and class action. *Id*.  Class Counsel also interviewed dozens of Class Members regarding their job duties, hours worked, and Source's pay policies and practices. *Id.*, ¶13.

During the course of discovery in this case, Plaintiffs obtained written and testimonial evidence regarding: (1) the terms of Class Members' employment with Source; (2) Source's non-compliance with the FLSA, state wage and hour laws; (3) Source's policies and procedures regarding the company's method of calculating Class Members' compensation; (4) company policies and practices regarding recording of hours worked by Class Members; (5) the Class Members' job duties; and (6) service operating procedures Class Members had to follow

regarding how to perform their job tasks and logging such information in digital handheld devices. *Id.*, ¶, at 18.

In summary, the Parties engaged in substantial investigation and analysis of the legal issues in reaching a Settlement in this case. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (emphasizing that the touchstone of the analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery).

### 3.    The Recommendations Of Experienced Counsel Favor Approval Of The Settlement.

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon,* 150 F.3d at 1026; *Boyd*, 485 F. Supp. at 622; *Ellis*, 87 F.R.D. at 18.  Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quoting *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, Class Counsel endorse the Settlement as fair, adequate, and reasonable.  Class Counsel have extensive experience in prosecuting and litigating class action wage and hour suits like this one.  Kennedy Fee Decl., ¶¶ 5, Ex. A; Declaration of Jahan C. Sagafi in Support of Attorneys' Fees and Costs ("Sagafi Fee Decl.," contemporaneously filed), ¶¶ 3, 10, 15; Declaration of John M. Padilla in Support of Attorneys' Fees and Costs ("Padilla Fee Decl.," contemporaneously filed), ¶¶ 10-12.  Class Counsel have conducted extensive investigation of this case, including reviewing over 10,000 pages of documents produced by Source, taking several depositions, interviewing dozens of potential Class Members, reviewing Class Member data, hiring an expert economist and, in consultation with that expert, performing complex damages analyses and compiling supporting evidence.  Kennedy Fee Decl., ¶ 25.  The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**4.      The Parties Participated In Arms-Length Negotiations Before An Experienced Neutral Mediator.**

As set forth above, a settlement is presumed fair if it was negotiated at arm's length by experienced, competent counsel equipped with enough information to act intelligently.  *See Tijero v. Aaron Bros., Inc.*, 2013 WL 6700102, at *7 (N.D. Cal. Dec. 19, 2013) (where settlement reached after parties participated in private mediation, settlement was appropriate for final approval); *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery.") (citing *Manual for Complex Litigation (Third)* § 30.42 (1995)).

The parties engaged in two separate mediation sessions.  On April 15, 2014, Plaintiffs and Source mediated Plaintiffs' claims in Denver, Colorado with mediator Adrienne Fechter to discuss resolution of all pending wage litigation against Source brought by Class Counsel including the California and Colorado actions.  Kennedy Preliminary Approval Decl. ¶ 25.  The parties did not reach a settlement.  *Id.*  After further discovery and motions practice, the parties participated in a second private mediation with experienced mediator Susan W. Haldeman of the San Francisco firm of Gregorio, Haldeman, & Rotman on November 4, 2014.  *Id.*, ¶ 26.  Prior to the second mediation, both parties exchanged detailed mediation briefs that included their respective assessments of the case and appendices containing several hundred pages of supporting documentation and evidentiary materials, and then provided to the mediator supplemental mediation briefs, thoroughly responding to the arguments made by each side in their opening mediation briefs.  *Id.*, ¶ 27.  Plaintiffs' mediation brief included exhibits with their detailed damages analysis and the assumptions underlying them.  *Id.*, ¶ 28.  The damages analysis resulted from extensive analyses of Source data performed by Plaintiffs' expert consultant, David Breshears of Hemming Morse LLP.  Kennedy Fee Decl., ¶ 34. Ex. C; Dkt. 119-1, Kennedy Preliminary Approval Decl., ¶ 20.  The parties worked until past 11:00 p.m., reached an agreement, and memorialized it in a memorandum of understanding.  Kennedy

Preliminary Approval Decl., ¶ 26.  In the weeks following the mediation, the Parties drafted, negotiated, and finalized a settlement agreement which was submitted to the Court on February 19, 2015.  (Dkt. 119-2).

### D. The Settlement Provides Substantial, Certain Benefits And Avoids The Risk, Cost, Delay, And Burden Of Further Litigation.

#### 1. The Value Of The Settlement Favors Final Approval.

The value of the Settlement—$10,000,000—is an excellent result, and the Settlement compares favorably to other similar class-action settlements recently approved in this District. *See* Plaintiffs' Motion for Attorneys' Fees and Costs, contemporaneously filed, pp. 8, 12 (citing cases).  This is especially true in light of the defenses raised by Source regarding the propriety of class and collective certification and on the merits of Plaintiffs' claims.  Kennedy Fee Decl., ¶¶ 21, 22.  Plaintiffs faced the very real possibility that if they proceeded to trial, they might obtain little if any recovery for the Class.  *Id.*

This recovery is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes … Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the Parties each give up something they might have won had they proceeded with litigation[.]"  *Officers for Justice*, 688 F.2d at 624 (citation omitted).  Accordingly, the Settlement is not to be judged against a speculative measure of what might have been achieved.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).  In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  *Hanlon*, 150 F.3d at 1027. In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  Therefore, the $10,000,000 settlement amount is well within the range of reasonableness.

2.      **Further Litigation Would Involve Risk, Expense, Delay, And Burden On Class Members.**

When a party continues to deny liability, there is an inherent risk in continuing litigation. In *Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 at *5 (N.D. Cal. April 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation. *See also Mora v. Harley-Davidson Credit Corp.*, 2014 WL 29743 at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to settlement agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602 at *4 (N.D. Cal. Apr. 26, 2013) ("[E]ven with a strong case, litigation entails expense.").

Similarly here, Source vehemently contests liability and the propriety of collective and class certification. (Dkt. 119-2, § II.I). Source has vigorously litigated this case, filing multiple motions to bar collective and class treatment and to stay the case pending approval of the settlement in *Meza v. Source*, Case No. 30-2014-00712145-CU-OE-CXC (Cal. Super. Ct.) ("*Meza*"). (Dkts. 34 and 63). In response to Plaintiffs' FLSA and Rule 23 certification motions, Source has argued that: (a) its policy of paying Service Technicians a higher rate of pay for hours worked outside the regular workday but excluding such premium payments from the regular rate calculation was lawful (Dkt. 84); and (b) Rule 23 certification should be denied in part because the Class Members' claims regarding standby time and meal and rest breaks were plagued by individualized inquiries, rending these claims inappropriate for class treatment under the FLSA and Rule 23. (Dkt. 84). Source's absolute denial of liability, paired with its diligent efforts to prevent collective and class treatment, spotlight the risks of continued litigation and favor granting final approval to the proposed Settlement. Kennedy Fee Decl., ¶¶ 21, 22.

Moreover, this nationwide class and collective action involves intricate legal and factual questions under federal and state law. *Id.* Litigating these complex claims would require substantial and additional discovery and further pre-trial motions, as well as the consideration, preparation, and presentation of voluminous documentary and testimonial evidence. Trial itself would require the use of expert witnesses at the damages phase, and would involve numerous

complex legal and factual issues.  Once liability had been established on a class-wide basis, Class Members might be required to testify at individual damages mini-trials.  As is typical with any case, but especially so with class actions, appeals would probably follow, with the result that payments to Class Members, if any, would likely occur only after several years of delay.  In contrast, the Settlement will yield a prompt, certain, and substantial recovery for the Class Members.  Such a result benefits the Parties and the court system.

     **E.**    **<u>The Court Should Grant Final Class Certification And Collective Action Designation.</u>**

The Court's Preliminary Approval Order provisionally certified the Settlement Class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and provisionally designated the case as an FLSA collective action.  (Dkt. 131, Preliminary Approval Order, § II.B).  The Court ruled that, for purposes of settlement, the Class meets the Rule 23 requirements as well as the FLSA collective action requirements.  *Id*.  The Court also appointed the named Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel.  *Id*., § III.  For these reasons, and the reasons set forth in Plaintiffs' motion for preliminary settlement approval, Class Counsel respectfully submit that the Court should grant final certification and collective action designation for purposes of settlement of this matter and should confirm the appointment of the class representatives and class counsel.

**III.**    **<u>CONCLUSION</u>**

For the reasons set forth above, Class Counsel respectfully request that the Court (1) grant final approval of the Settlement and (2) grant final class certification and collective action designation of the Settlement.

1

Dated:  June 29, 2015

2

3

By /s/Galvin B. Kennedy

Galvin B. Kennedy, Pro Hac Vice

4

gkennedy@kennedyhodges.com

Gabriel Assaad, Pro Hac Vice

5

gassaad@kennedyhodges.com

KENNEDY HODGES, L.L.P.

6

711 W. Alabama Street

Houston, TX  77006

7

Telephone:  (713) 523-0001

Facsimile:   (713) 523-1116

8

By /s/Gabriel A. Assaad

9

Gabriel Assaad, Pro Hac Vice

gassaad@kennedyhodges.com

10

KENNEDY HODGES, L.L.P.

711 W. Alabama Street

11

Houston, TX  77006

Telephone:  (713) 523-0001

12

Facsimile:   (713) 523-1116

13

/s/ John M. Padilla

14

John M. Padilla (Cal. Bar No. 279815)

Email:  jpadilla@pandrlaw.com

15

PADILLA & RODRIGUEZ, L.L.P.

601 South Figueroa Street, Suite 4050

16

Los Angeles, CA 90017

Telephone: (213) 244-1401

17

Facsimile: (213) 244-1402

18

/s/Jahan C. Sagafi

19

Jahan C. Sagafi (Cal. Bar No. 224887)

jsagafi@ottengolden.com

20

OUTTEN & GOLDEN LLP

One Embarcadero Center, 38th Floor

21

San Francisco, CA 94111

Telephone:  (415) 638-8800

22

Facsimile:  (415) 638-8810

23

/s/Christopher McNerney

Christopher McNerney Pro Hac Vice

24

cmcnerney@outtengolden.com

OUTTEN & GOLDEN LLP

25

3 Park Ave

New York, NY 10016

26

Telephone: (212) 245-1000

Facsimile: (646) 509-2060

27

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF SETTLEMENT; MEMORANDUM IN SUPPORT OF MOTION
CASE NO. 3:13-CV-04960-VC